IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| ARMANDO ADAME | § | |
| v. | § | CIVIL ACTION NO. 5:05cv200 |
| STATE OF TEXAS, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Plaintiff Armando Adame, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Adame complained of an altercation on September 23, 2004, in which he and two other inmates were assaulted by four members of a rival gang. Adame says that these inmates were let out of their cells without being searched, despite regulations requiring that they be brought out individually and after a search, and then allowed onto the section where he was staying. During the assault, the officers did not open the section door to allow him to escape.

On September 7, 2006, the Defendants filed a motion for summary judgment, arguing that their actions were objectively reasonable, they were not deliberately indifferent to Adame's safety, and they are entitled to Eleventh Amendment immunity to claims brought against them in their official capacities. Adame filed a response to the motion on September 22, 2006.

On October 5, 2006, the Magistrate Judge issued a Report recommending that the motion for summary judgment be denied. The Magistrate Judge noted that the motion for summary judgment entirely failed to mention the fact that Adame and his assailants were members of rival

gangs, known to have animosity between them, and so a disputed issue of fact existed concerning the Defendants' knowledge of the existing danger. The Magistrate Judge also determined that a disputed issue of fact existed concerning the Defendants' mental state, and with regard to whether or not the Defendants were deliberately indifferent for failing to open the door to permit him to escape. Thus, the Magistrate Judge reasoned that the Defendants were not entitled to qualified immunity and that their motion for summary judgment on this ground was without merit. The Magistrate Judge did recommend granting the motion for summary judgment as to the Defendants' invocation of Eleventh Amendment immunity for claims brought against them in their official capacities.

The Defendants filed objections to the Magistrate Judge's Report. In these objections, the Defendants argue, for the first time, that during the cell moves taking place immediately before the incident, two "move sheets" were generated, one for inmates on lockdown and one for inmates not on lockdown. The lockdown list showed gang designations, while the other one did not. Both Adame and his assailants were on the lockdown list.

The Defendants say that some of the "non-lockdown" inmates were supposed to be moved to cells which then housed "lockdown" inmates, who would necessarily have to be moved out of these cells first. Thus, the Defendants say, an officer working off of the "non-lockdown" list would not know if the inmate presently occupying a cell was on the lockdown list or not.

On the morning of September 23, the Defendants say, Sgt. Forte, the building sergeant, gave Defendants Suh and Peel the list of non-lockdown prisoners and they began moving them accordingly. Around 2:25 p..m, Suh was moving inmates in Seven Building, including Adame, out of their cells to make room for the incoming prisoners from Four Building. The Defendants claim that Suh did not know that these inmates in Seven Building were on lockdown, or that they were gang members, because he was working from the non-lockdown list.

The Defendants go on to assert that Defendant Peek was also working from the non-lockdown list, and so did not know that inmates on lockdown had been allowed to go to the

2

dayroom. Defendant Flowers arrived for duty that day at 2:30 p.m., relieving Forte. At that time, Forte gave him the lockdown list and told him to make the lockdown moves last, to keep the lockdown and non-lockdown offenders separated. Flowers put the list in his pocket "to avoid confusion." Pace also arrived at 2:30 p.m. and was working in the control picket; he had no lists and so opened doors at the direction of the officers on the floor, Suh and Peek.

At 2:35 p.m., the Defendants say, Flowers told Peek to go to Seven Building to see who was there so he could move the inmates from Seven to Four Building. Peek went to Seven Building and told the inmates in Section 2 and Section 3 dayrooms to gather their belongings because Flowers was coming to get them. Pace opened the Section 2 doors and Peek began to move the inmates into the sallyport. Peek saw that one inmate was not moving out of the dayroom, so he went into the dayroom and told the inmate to go to his cell, which he did. Pace assumed that the inmates from Section 2 and Section 3 were leaving the building, so he opened the Section 3 door; at this point, four inmates from Section 2 rushed into the Section 3 dayroom and carried out the assault.

The Defendants say that Suh saw the assault begin and closed the Section 3 door to isolate the incident. Flowers was on his way to Seven Building when he was notified that a fight had begun, he went to the scene and called for chemical agents and additional staff. Flowers, Peek, and Suh used chemical agents to end the fight, and Flowers ordered the inmates to stop fighting, but to no avail. Tear gas was shot into the dayroom; one of the canisters rolled back under the door, and Flowers was overcome and had to be assisted off the pod. All of the inmates received disciplinary cases for fighting.

The Defendants maintain that the Magistrate Judge incorrectly concluded that the risk of harm was obvious, the Magistrate Judge failed to consider the "objective reasonableness" of the Defendants' actions, there is no constitutional duty for officers to intervene in an altercation, and the Magistrate Judge incorrectly considered the reasonableness of the Defendants' actions as a group, rather than considering each one individually.

Adame has filed a response to the Defendants' objections, saying that they have no merit and that the Magistrate Judge's Report was correct. Adame says that the prison documents furnished by the Defendants make clear that prison officials knew that he and his assailants were members of rival gangs; the response to a grievance which he filed says that he was placed on lockdown "as a known member of an STG group [i.e. a gang] participating in disruptive activities against other STG groups" and that the imposition of a lockdown is "a serious management initiative in response to an immediate or imminent threat to the safety, security, and order of a unit/facility." Adame says that there is a genuine issue of fact as to whether or not the Defendants knew or should have known of a danger, and that this is all that is required; he cannot be forced to try his entire case in a summary judgment proceeding.

Adame then says that the Magistrate Judge was being "brief and concise" in the Report, and did not deny qualified immunity to the Defendants as a group. In addition, he says that the Defendants had no objection be being granted Eleventh Amendment immunity as a group and that the Defendants cannot escape liability by paring out small roles so that none are responsible for their actions as a whole. He says that the Defendants each took a role in instigating the incident and acted as a group in orchestrating the assault upon him.

Adame points out that the lockdown resulted from a conflict which occurred in May of 2004, and so security measures were in place for over four months before the incident forming the basis of this lawsuit took place. Specific precautions were imposed on the inmates in lockdown, including the fact that they, unlike inmates not on lockdown, cannot walk freely to the chow hall, work, and recreation, and so staff members must know who is on lockdown to ensure that these precautions are followed. He says that according to the Warden's Report, attached to his motion for summary judgment, there are lockdown indicators on the control panel, as well as a strip painted on the front of the cell door, so that all officers can know which cells house inmates on lockdown. He says that the Defendants worked on the Plaintiff's pod many times in the preceding four and a half months and so it is ridiculous to assert that they did not know of these measures; he says that since

no incident like this had happened previously, the Defendants must be arguing that they were unaware of the lockdown on this day and this day only.

Adame points to the move slip, noting that the form containing Adame's name as well as the names of the other inmates assaulted with him (Jesus Andrade and Manuel Hurtado) bears handwritten entries in the margin; a note by Andrade's name reads "sitting at bench" and a note by Hurtado's name reads "sitting in dayroom." Adame says that this shows that someone noted the fact that the inmates were on lockdown, and that they were in the dayroom, and so these entries must have been made by Flowers, since no one else had possession of the document. However, Adame says, Flowers said that he did not make it to the pod before the fight broke out, so someone else must have told him that these inmates were in the dayroom.

Adame asserts that the Defendants therefore knew that there were gang-affiliated inmates in the dayroom, but nonetheless proceeded to remove other inmates, from a rival gang, out of their cells and then allow these other inmates to go through two security doors and assault him. In other words, he says, the Defendants knew exactly who was sitting in the dayroom on Three Section before the incident occurred, which Adame contends is evidence that they were deliberately indifferent to his safety.

Next, Adame says that the Defendants fail to explain how it would pose a danger to them to open the door when he broke free of his assailants and ran over to the door. He says that allowing him to escape would not have posed any danger to the officers standing by the section door. Instead, Adame says, they stood and watched as one of the assailants made his way over to Adame and began stabbing him again. Adame says that this amounts to deliberate indifference to his safety.

As a general rule, issues raised for the first time in objections to the Report of the Magistrate Judge are not properly before the District Court. Finley v. Johnson, 243 F.3d 215, 218 n.3 (5th Cir. 2001), *citing* United States v. Armstrong, 951 F.2d 626, 630 (5th Cir. 1992); Cupit v. Whitley, 28 F.3d 532, 535 n.5 (5th Cir. 1994). In this case, the Defendants' claims concerning the


move slips, and the entire chronology of events which they sketch out, are raised for the first time in their objections. Consequently, these assertions are not properly before the Court.

Even if they were, however, the Defendants have shown no basis upon which to reject the Magistrate Judge's Report. They have presented their version of events and asked that the Court grant summary judgment on this basis, but the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994). Upon such an examination, summary judgment is improper if disputed issues of material fact exist. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994).

In this case, it is apparent that disputed issues of material fact exist, precluding the granting of summary judgment. As the Magistrate Judge observed, summary judgment disposition is inappropriate if the evidence before the Court, viewed as a whole, could lead to different factual findings and conclusions. Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987). It is not the function of the trial judge, in ruling on a motion for summary judgment, to weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence. Honore, 833 F.2d at 567, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Nor have the Defendants shown that the undisputed facts show that they are entitled as a matter of law to the defense of qualified immunity. The Magistrate Judge concluded that Adame had sufficiently alleged facts tending to show that the Defendants were deliberately indifferent to his safety and that these actions were objectively unreasonable in light of the clearly established law. In addition, the Magistrate Judge did not review the Defendants' claim to qualified immunity by looking at them as a group, but simply concluded that each of them had failed to show their entitlement to this defense. The Defendants' objections are without merit.

The Court has conducted a careful *de novo* review of the pleadings in this cause, including the Plaintiff's complaint, the Defendants' motion for summary judgment, the Plaintiff's response thereto, the competent summary judgment evidence furnished by the parties, the Report of

the Magistrate Judge, the Defendants' objections thereto, and the Plaintiff's response to these objections, as well as all other pleadings, documents, and records in the case. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the objections of the Defendants are without merit. It is accordingly

ORDERED that the Defendants' objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the Defendants' motion for summary judgment, filed September 7, 2006 (docket no. 48) is hereby GRANTED as to any claims brought against them in their official capacities. All claims brought against the Defendants in their official capacities are hereby DISMISSED. The dismissal of these claims shall not count as a strike for purposes of 28 U.S.C. §1915(g). It is further

ORDERED that the Defendants' motion for summary judgment is in all other respects DENIED.

**SIGNED this 8th day of November, 2006.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE